# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

SCOTT R. SHALLCROSS,

                    Petitioner,

v.

WILLIAM POLLARD,

                    Respondent.

Case No. 15-CV-1136-JPS

ORDER

Scott R. Shallcross (Shallcross) pled guilty to two counts of homicide by intoxicated use of a motor vehicle. (Docket #12, Exs. 1, 15). Mr. Shallcross's petition for a writ of habeas corpus, challenging those convictions, is now before the Court. (Docket #1). The matter is fully briefed and ripe for decision. (Docket #21, #25, #30).

## 1.      BACKGROUND

On November 27, 2009, at approximately 12:28 a.m., Mr. Shallcross crashed his Honda Civic (Civic) into a truck while driving drunk in the City of Milwaukee. (Docket #12, Ex. 2 ¶ 2). According to witness reports, the Civic was driving at speeds in excess of 80-100 miles per hour just before the collision occurred; both of the occupants of the truck—Jeremy Neuenfeldt and Thomas Ballman—died. (Docket #12, Ex. 15 ¶ 2).

When first responders arrived at the scene, they found two survivors in the Civic. (Docket #12, Ex. 15 ¶ 2). Mr. Shallcross was in the backseat and Daniel Gorectke (Gorectke) was in the passenger seat. (Docket #12, Ex. 2 ¶ 2). No one was in the driver's seat. (Docket #12, Ex. 2 ¶ 2). After cutting the roof off of the vehicle to reach Mr. Shallcross and Mr. Gorectke, both men were taken to the hospital. (Docket #12, Ex. 2 ¶ 2).

During a police interview shortly thereafter, Mr. Gorectke reported that he and Mr. Shallcross had been drinking at a bar prior to the car accident. (Docket #12, Ex. 2 ¶ 3). According to the police report, Mr. Gorectke stated that "[w]hen they were getting ready to leave, a person they were talking with told them that [Mr. Gorectke] []and his friend were too drunk to drive.…" (Docket #12, Ex. 2 ¶ 3).

The police next spoke with Mr. Shallcross at approximately 3:03 a.m., and requested a blood sample. (Docket #12, Ex. 2 ¶ 4). An officer and two nurses documented Mr. Shallcross's oral consent to the blood draw. (Docket #12, Ex. 2 ¶ 4). The blood test performed on that sample revealed that Mr. Shallcross had a blood alcohol content of 0.158. (Docket #12, Ex. 2 ¶ 4).

While at the scene investigating, police also interviewed a man who reported seeing "someone cross in front of the suspect vehicle and then head westbound." (Docket #12, Ex. 2 ¶ 5). Though police investigated the possibility of a third-party driver, they were not able to identify anyone, and no local hospitals reported contact with potential suspects. (Docket #12, Ex. 2 ¶ 5).

Later that evening, police spoke with Mr. Gorectke again. (Docket #12, Ex. 2 ¶ 6). He reported that "Shallcross wanted [him] to say that there was someone else, a third person, in the car that was driving at the time of the accident." (Docket #12, Ex. 15 ¶ 6). However, Mr. Gorectke stated that Mr. Shallcross was the driver of the Civic and that "immediately after the accident Mr. Gorectke observed Shallcross crawling into the back seat from the driver's seat." (Docket #12, 2 ¶ 6).

Two days later, on November 29, 2009, Mr. Shallcross admitted to the police that he was driving the Civic at the time of the accident. (Docket #12,

Ex. 2 ¶ 7). In a follow up interview on November 30, 2009, Mr. Shallcross provided further testimony regarding his drinking prior to the incident and how he crawled into the backseat of the car after the collision. (Docket #12, Ex. 2 ¶ 7).

On May 14, 2010, represented by trial counsel—Matthew Huppertz—Mr. Shallcross pled guilty to two counts of homicide by intoxicated use of a motor vehicle in Milwaukee County Circuit Court. (Docket #12, Ex. 15). Approximately four months later, on September 3, 2010, the Honorable Kevin E. Martens sentenced Mr. Shallcross to two twelve-year terms of imprisonment, which were to operate consecutively, along with a six-year term of supervised release. (Docket #12, Ex. 1).

After pleading guilty, Mr. Shallcross retained new counsel—Thomas Kurzynski—to file a post-conviction motion. (Docket#12, Ex. 4 ¶ 4). In those proceedings, which will be collectively referenced by the Court hereinafter as "*Shallcross I*," Mr. Shallcross asked the court to permit him to withdraw his guilty plea on the grounds that his trial counsel was ineffective for, *inter alia*,[1] failing to pursue a motion to suppress his confession. (Docket #12, Ex. 4 ¶ 4). Specifically, Mr. Shallcross argued that his inculpatory statements were made "involuntarily" because they were made after he had allegedly invoked his

---

[1] In this post-conviction motion, Mr. Shallcross also argued that his trial was ineffective because he failed to take certain investigative steps and obtain toxicology reports from the victims. (Docket #12, Ex. 4 ¶ 4). Though both the circuit court and court of appeals ruled against Mr. Shallcross on these theories (*see* Docket #12, Ex. 4 ¶¶ 4-14), Mr. Shallcross does not raise these theories in the instant petition. (Docket #1). Accordingly, the Court will not address them.

right to counsel under *Miranda v. Arizona*, 384 U.S. 436 (1966).[2] (Docket #12, Ex. 4 ¶¶ 19-28)

On October 23, 2012, the Wisconsin Court of Appeals affirmed the circuit court's decision to deny relief. (*See generally* Docket #12, Ex. 4). First, the court of appeals ruled that Mr. Shallcross's trial counsel had not performed deficiently by failing to pursue a motion to suppress his statements because Mr. Shallcross had, on various occasions during the underlying criminal prosecution, expressly disclaimed any desire to pursue pretrial motions. (Docket 12, Ex. 4 ¶¶ 16-18) ("The record shows that Shallcross made the decision to accept responsibility for the crimes in this case rather than file a suppression motion. The decision was his to make. His lawyer did not act deficiently by abiding by that decision.") (internal citations omitted). Second, the appellate court ruled that Mr. Shallcross had suffered no prejudice from trial counsel's failure to inform Mr. Shallcross that certain statements might have been rendered involuntarily. (Docket #12, Ex. 4 ¶¶ 19-28) (concluding that Mr. Shallcross's invocation of a lawyer was "at most" ambiguous and that his request to talk to his mother had no constitutional significance).

Mr. Shallcross did not file a timely appeal to the Wisconsin Supreme Court. (Docket #12, Ex. 5) (citing Wis. Stat. § (Rule) 809.62(4)(c)).

Thereafter, Mr. Shallcross returned to state court on a motion for collateral post-conviction relief under Wis. Stat. § 974.06. (Docket #12, Ex. 2

---

[2]In addition, Mr. Shallcross argued that his statements were rendered involuntarily because they were made: (1) while he was under the influence of morphine; and (2) after he was subject to "deceitful suggestions" by law enforcement. (Docket #12, Ex. 4 ¶¶ 22-23). Mr. Shallcross does not advance those arguments in this petition. (Docket #1).

¶ 1). For the sake of clarity, these proceedings will be collectively referenced hereinafter by the Court as "*Shallcross II*." In *Shallcross II*, Mr. Shallcross once again challenged the effectiveness of his trial counsel and also challenged the effectiveness of his post-conviction counsel. (Docket #12, Ex. 2 ¶ 1). More specifically, Mr. Shallcross again argued that trial counsel was ineffective in failing to pursue a motion to suppress his confession. This time, however, Mr. Shallcross presented three (3) distinct theories upon which a motion to suppress should have been made. (Docket #12, Ex. 6 at 17-34). He argued that the statements could have been suppressed on the grounds that they were made after: (1) the police arrested him without probable cause; (2) law enforcement deprived him of a timely probable cause hearing under *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991); and (3) he had invoked his right to counsel under *Miranda*. (Docket #12, Ex. 2 ¶¶ 27-31; Docket #12, Ex. 6 at 17-34). Mr. Shallcross also argued that his trial counsel was ineffective for failing to pursue a motion to suppress blood draw evidence following his purportedly unlawful arrest. (Docket #12, Ex. 2 ¶¶ 16-26; Docket #12, Ex. 6 at 17-23, 28-30). The trial court denied the motion without an evidentiary hearing. (Docket #1, Ex. 2 ¶ 10).

On April 21, 2015, the Wisconsin Court Appeals issued a per curiam opinion affirming the circuit court's decision to deny Mr. Shallcross relief and rejecting Mr. Shallcross's assertion that he was entitled to an evidentiary hearing. (*See generally* Docket #12, Ex. 2).[3] After the court of appeals issued

---

[3]Mr. Shallcross had also argued for the first time in *Shallcross II* that the lower court who presided over his post-conviction motion was biased. (Docket #12, Ex. 2 ¶ 33). However, as he raised that issue for the first time on appeal, the court declined to address it. (Docket #12, Ex. 2 ¶ 33). Mr. Shallcross does not dispute that ruling. (Docket #1).

its decision, Mr. Shallcross timely petitioned for review, but the Wisconsin Supreme Court declined that request on September 9, 2015. (Docket #12, Ex. 3.)

2.     CLAIMS

Mr. Shallcross filed his petition for a writ of habeas corpus in this Court on September 21, 2015. (*See generally* Docket #1). In that petition, Mr. Shallcross argues that:

1.     His trial counsel was ineffective for failing to pursue a motion to suppress evidence obtained from a blood draw following his allegedly unlawful arrest;

2.     His trial counsel was ineffective for failing to pursue a motion to suppress his inculpatory statements, also following the allegedly unlawful arrest;

3.     His trial counsel was ineffective for failing to pursue a motion to suppress his inculpatory statements after Mr. Shallcross allegedly invoked his right to counsel under *Miranda*;

4.     His trial counsel was ineffective for failing to pursue a motion to suppress his inculpatory statements because they were allegedly obtained in violation of *Riverside*;

5.     His appellate counsel was ineffective for failing to provide Mr. Shallcross "with a meaningful direct appeal"; and

6.     The trial court in *Shallcross II* erroneously denied him an evidentiary hearing.

(Docket #1 at 5-12).

3.     STANDARD OF REVIEW

"Section 2254(a) permits a federal court to entertain only those applications alleging that a person is in state custody 'in violation of the Constitution or laws or treaties of the United States.'" *Cullen v. Pinholster*, 563

U.S. 170, 181 (2011) (citing 28 U.S.C. § 2254(a)). "As amended by [the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA)], 28 U.S.C. § 2254 sets several limits on the power of a federal court to grant an application for a writ of habeas corpus on behalf of a state prisoner." *Id.* As a result, the Court may grant a writ of habeas corpus only if the state court's decision with respect to that claim was: (1) "contrary to…clearly established federal law, as determined by the Supreme Court of the United States"; (2) "involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (3) "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d)(1–2); *see also Conner v. McBride*, 375 F.3d 643, 648–49 (7th Cir. 2004) (citing *Green v. Johnson*, 116 F.3d 1115, 1121 (5th Cir. 1997)). "When a state collateral review system issues multiple decisions, [courts] typically consider the last reasoned opinion on the claim.…" *Taylor v. Grounds*, 721 F.3d 809, 817 (7th Cir. 2013) (quoting *Woolley v. Rednour*, 702 F.3d 411, 421 (7th Cir. 2012)).

"A state court decision is contrary to clearly established federal law if the court applies a rule that plainly contradicts the Supreme Court's governing rule or if it comes to a result different than did the Supreme Court on substantially identical facts." *Avila v. Richardson*, 751 F.3d 534, 536 (7th Cir. 2014) (citing *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000)); s*ee also Kamlager v. Pollard*, 715 F.3d 1010, 1016 (7th Cir. 2013) (citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)).

"A decision involves an 'unreasonable application' of Supreme Court precedent if the decision, while identifying the correct governing rule of law, applies it unreasonably to the facts of the case." *Bailey v. Lemke*, 735 F.3d 945,

949 (7th Cir. 2013) (citing *Williams*, 529 U.S. at 407). However, the Supreme Court has made clear that "an *unreasonable* application of federal law is different from an *incorrect* application of federal law." *Williams*, 529 U.S. at 410 (emphasis in original). In fact, Mr. Shallcross will be entitled to habeas relief only if he can "show that the state court's ruling on the claim…was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Taylor*, 721 F.3d at 817.

"A decision 'involves an unreasonable determination of the facts if it rests upon factfinding that ignores the clear and convincing weight of the evidence.'" *Bailey*, 735 F.3d at 949–50 (quoting *Goudy v. Basinger*, 604 F.3d 394, 399–400 (7th Cir. 2010)); *see also Carter v. Thompson*, 690 F.3d 837, 839 (7th Cir.2012) (quoting 28 U.S.C. § 2254(e)(1)) ("A state court's factual findings are 'presumed to be correct' in a federal habeas corpus proceeding unless they are rebutted by 'clear and convincing evidence.'").

Moreover, habeas relief "is unavailable to remedy errors of state law." *Perry v. McCaughtry*, 308 F.3d 682, 688 (7th Cir. 2002) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)). The Supreme Court has "repeatedly held that 'it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.'" *Washington v. Sarausad*, 555 U.S. 179, 192 n.5 (2009) (quoting *Estelle*, 502 U.S. at 67–68).

Finally, "[i]n the case where the Wisconsin state court did not reach the merits, § 2254 does not apply and this court applies the general habeas standard set forth at 28 U.S.C. § 2243." *Muth v. Frank*, 412 F.3d 808, 814 (7th Cir. 2005) (citing *Braun v. Powell*, 227 F.3d 908, 916–17 (7th Cir. 2000)). "An

Case 2:15-cv-01136-JPS   Filed 10/17/16   Page 8 of 24   Document 31

adjudication on the merits is perhaps best understood by stating what it is not: it is not the resolution of a claim on procedural grounds." *Id.* (citing *Sellan v. Kuhlman*, 261 F.3d 303, 311 (2d Cir. 2001) ("'Adjudicated on the merits' has a well settled meaning: a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground.")). "AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. In fact, several circuits have held that a state court need not offer any reasons and summarily dispose of a petitioner's claim and that summary disposition would be an adjudication on the merits." *Id.* at 815. (collecting cases). Nonetheless, "where a state court overlooks a constitutional claim that was fairly presented to it, federal review is de novo." *Harris v. Thompson*, 698 F.3d 609, 624 (7th Cir. 2012).

4.     ANALYSIS

Mr. Shallcross raises six grounds for relief in his habeas petition. (Docket #1). During the course of briefing, however, Mr. Shallcross informed the Court that he no longer seeks relief under claim five of his petition—which relates to his post-conviction counsel's effectiveness. (Docket #21 at 27; Docket #30 at 5-6). Accordingly, the Court will grant that request and first address Mr. Shallcross's ineffective assistance of trial counsel claims; next, the Court will address Mr. Shallcross's claim that the circuit court improperly denied him an evidentiary hearing in *Shallcross II.*

4.1     Ineffective Assistance Claims

To prevail on his claims of ineffective assistance of counsel, Mr. Shallcross must satisfy an extremely high burden. The two-prong test set

Case 2:15-cv-01136-JPS   Filed 10/17/16   Page 9 of 24   Document 31

forth by *Strickland*, of course, applies to claims of ineffective assistance of counsel, requiring a showing that: (1) counsel's performance "fell below the objective standard of reasonableness"; and (2) that the defendant was "prejudiced by the deficient performance." *Thomas v. Clements*, 789 F. 3d 760, 765 (7th Cir. 2015) (citing *Woolley*, 702 F.3d at 420–21; *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

But, *Strickland* only provides the standard to be applied on direct review; where the Court is reviewing a state conviction under § 2254, the Court must also apply AEDPA's deferential standard, making its "review 'doubly' deferential as to those issues ruled on by the state court." *Ruhl v. Hardy*, 743 F.3d 1083, 1092 (7th Cir. 2014) (quoting *Harrington*, 562 U.S. at 105); s*ee also Welch v. Hepp*, 793 F.3d 734, 738 (7th Cir. 2015) (where state appellate court has rejected a *Strickland* claim, "review of the state court decision is highly deferential") (citing *Cullen*, 563 U.S. at 181; *Campbell v. Reardon*, 780 F.3d 752, 761 (7th Cir. 2015)). "When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105. Thus, Mr. Shallcross will not be entitled to relief unless he can "show that the Wisconsin appellate court's decision was 'so lacking in justification' that there is no possibility for 'fairminded disagreement.'" *Welch*, 793 F.3d at 738 (quoting *Harrington*, 562 U.S. at 103).

In the context of a guilty plea, the prejudice prong may be explained as a reasonable probability that, but for counsel's errors, the petitioner would have gone to trial instead of pleading guilty. *Acevedo-Carmona v. Walter*, 170 F.Supp. 2d 820, 824 (N.D. Ill. 2001). A habeas petitioner bringing an

ineffective assistance of counsel claim must show that the state court unreasonably applied *Strickland* in evaluating his claim. *Julian v. Bartley*, 495 F.3d 487, 494 (7th Cir. 2007). The state court's application of *Strickland* must be more than erroneous, it must be "objectively unreasonable." *Id.* (citing *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003)).

For the reasons stated below, the Court concludes that all Mr. Shallcross's ineffective assistance of counsel claims—claims one, two, three, and four—fail.

### 4.1.1   Motion to Suppress Blood Draw Evidence

Claim One of Mr. Shallcross's habeas petition challenges a blood draw that the police obtained from Mr. Shallcross at the hospital trauma center. (Docket #1 at 5-7). That blood draw, taken at approximately 3:00 a.m. on November 27, 2009 (the morning of the accident), revealed that Mr. Shallcross's blood alcohol concentration was 0.158. (Docket #12, Ex. 4 ¶ 2).

Mr. Shallcross argues that prior to his blood draw, the police arrested him without a warrant and without probable cause, and, therefore, the evidence obtained therefrom was the "fruit" of a Fourth Amendment violation. (Docket #1 at 5-8). For the purpose of his habeas petition, Mr. Shallcross argues that his trial counsel's failure to challenge this Fourth Amendment violation—with the objective of suppressing the results of the blood draw—constituted ineffective assistance. (Docket #1 at 5-7). Mr. Shallcross did not raise this argument in the context of *Shallcross I.* (Docket #12, Ex. 4). Instead, he raised the issue during *Shallcross II.* (Docket #12, Ex. 2 ¶ 16).

In *Shallcross II*, the Wisconsin Court of Appeals assumed, without deciding, that: (1) the police conducted a warrantless arrest of Shallcross

Case 2:15-cv-01136-JPS   Filed 10/17/16   Page 11 of 24   Document 31

before the blood draw; and (2) that the police lacked probable cause to arrest. (Docket #12, Ex. 2 ¶ 17). In other words, the court *assumed*, without deciding, a Fourth Amendment violation occurred. Nonetheless, the court also held that Mr. Shallcross was not entitled to habeas relief because he did not demonstrate that any prejudice under *Strickland* resulted from his trial counsel's failure to pursue a motion to suppress. (Docket #12, Ex. 2 ¶ 26). The court based this conclusion on its determination that a motion to suppress would have been fruitless because the police both: (1) complied with Wisconsin's implied consent statute, Wis. Stat. § 343.305; and (2) obtained Mr. Shallcross's actual consent. (Docket #12, Ex. 2 ¶ 26). This application of *Strickland* did not: (1) result in a decision that was contrary to clearly established federal law; (2) constitute an unreasonable application thereof; or (3) involve an unreasonable determination of the facts.

First, the Wisconsin appellate court's decision was not contrary to clearly established federal law. It did not apply law that "plainly contradicts" federal law, *see Avila*, 751 F.3d at 536; rather, it applied *Strickland* (Docket #12, Ex. 2 ¶ 26), the Supreme Court's standard governing ineffective assistance of counsel claims, which still applies, *see Welch*, 793 F.3d at 738-39 (applying *Strickland*).

Second, the Wisconsin Court of Appeals did not unreasonably apply federal law. Rather, it reasonably examined the evidence to conclude that Mr. Shallcross would not have been successful had his trial counsel filed a motion to suppress evidence stemming from the blood draw. (Docket #12, Ex. 2 ¶ 26).

The operative implied consent statute in effect at the time of Mr. Shallcross's arrest provided that:

> [i]f a person is the *operator* of a vehicle that is involved in an accident that *causes the death* of or great bodily harm to any person, *and a law enforcement officer detects any presence of alcohol,…the law enforcement officer may request* the operator to provide one or more samples of his or her…blood…for the purpose [of testing]….If a person refuses to take a test under this paragraph, he or she may be arrested under [another statutory subsection].

(*See* Docket #12, Ex. 2 ¶ 18) (citing Wis. Stat. §343.305(3)(ar)(2007-08) and noting parenthetically that the statute had been amended and replaced in 2010 with Wis. Stat. §§ 343.503(3)(ar)1-2) (emphasis added).

Here, the state court reasonably concluded that the police complied with Wisconsin's operative implied consent statute.[4] (Docket #12, Ex. ¶¶ 2, 18-26). With respect to the "detect[ion]" of alcohol, the facts available to the state court reasonably established that prior to the blood draw: (1) Mr. Gorectke reported that he and Mr. Shallcross had been drinking at a bar where another patron advised them that they "were too drunk to drive"; and (2) the trauma center's admission notes indicated that both emergency medical personnel (and Mr. Shallcross himself) reported that the occupants of the Civic consumed alcohol that evening. (Docket #12, Ex. 2 ¶ 19; Docket #12, Ex. 11 at 4).

In addition, the court reasonably concluded that the police had "reason to believe" that Mr. Shallcross was the driver at the time of the accident. (Docket #12, Ex. 2 ¶ 22) (finding that the "reason to believe" standard was "low, requiring only that the officer have 'minimal suspicion,'" a legal conclusion that Mr. Shallcross does not challenge herein).

---

[4]Mr. Shallcross has never disputed, neither at the state level nor before this Court, that death resulted from the collision on November 27, 2009.

Immediately following the accident, the only two persons that law enforcement found in the Civic were Mr. Gorectke and Mr. Shallcross. (Docket #12, Ex. 2 ¶ 22). Both of them were found trapped in the vehicle, but only Mr. Gorectke was wearing a seat belt. (Docket #12, Ex. 2 ¶ 22). Moreover, Mr. Gorectke had been pinned in the passenger seat by the deployed air bag, a fact highly indicative of his having been in the passenger seat at the time of impact. (Docket #12, Ex. 2 ¶ 22). Even if an initial eyewitness report stated that a third man was spotted in front of the vehicle after the accident, the evidence reasonably available to the police at the time of the blood draw was sufficient to justify a "minimal suspicion" that Mr. Shallcross was the operator of the Civic under Wis. Stat. §343.305(3)(ar). (Docket #12, Ex. 2 ¶¶ 21-22).

Having established that law enforcement complied with the implied consent statute, the facts before the Wisconsin appellate court also reasonably suggested that Mr. Shallcross actually consented to the blood draw. (Docket #12, Ex. 2 ¶ 22). As noted by the court of appeals, Mr. Shallcross never disputed the fact that two medical personnel, serving as witnesses, signed the trauma center's Consent for Legal Blood Draw, thereby attesting to Mr. Shallcross's oral consent to the testing. (Docket #12, Ex. 2 ¶¶ 19, 25). And, because "[t]he Fourth Amendment's probable cause and warrant requirements do not apply…where an authorized party voluntarily consents to a search," the court did not unreasonably apply federal law in concluding that any motion to suppress the blood draw would have lacked merit. *See United States v. Parker*, 469 F.3d 1074, 1077 (7th Cir. 2006) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973)); *United States v. Johnson*, 427 F.3d 1053,

1056 (7th Cir. 2005); *United States v. Melgar*, 227 F.3d 1038, 1041 (7th Cir. 2000).

Mr. Shallcross nonetheless claims that the Wisconsin appellate court's decision on this issue involved an unreasonable application of federal law because the court did not properly consider whether his consent might, too, have been a "fruit" of law enforcement's unlawful arrest. (Docket #21 at 11). And, according to Shallcross, since the government had the burden to prove that his consent was lawful, the court of appeal's decision involved an unreasonable application of well established federal law. (Docket #21 at 9-13).

The court did, however, address this point, noting that "a Fourth Amendment violation does not itself vitiate consent." (Docket #12, Ex. 2 ¶ 24). No where in the court of appeals' decision does it indicate that the court relieved the government from having carried its burden to show that Mr. Shallcross's consent was voluntary. In fact, the Court explicitly acknowledged the government's "burden to show consent where the evidence is allegedly seized following a Fourth Amendment violation." (Docket #12, Ex. 2 ¶ 24 n. 4) (internal citations omitted). The fact that the court weighed the medical personnel's signatures more heavily than Mr. Shallcross's "conclusory assertions" regarding the involuntariness of his consent does not, in this Court's view, constitute an unreasonable application of federal law. *Cf. United States v. Parker*, 469 F.3d 1074, 1079 (7th Cir. 2006) (concluding that a "consent to the search constitute[d] an intervening circumstance" even had a "custodial detention developed into an arrest without probable cause"); *United States v. Cellitti*, 387 F.3d 618, 623 (7th Cir. 2004) (holding invalid a consent to search given by a defendant who was placed in handcuffs, driven to a police station, locked in a holding cell, and

Case 2:15-cv-01136-JPS   Filed 10/17/16   Page 15 of 24   Document 31

chained to a bench for several hours after an arrest without probable cause because consent was tainted by illegal arrest).

In sum, none of the conclusions made by the court of appeals with respect to the blood draw were contrary to federal law, involved an unreasonable application of clearly established federal law, or were based on an unreasonable determination of the facts. Thus, the Wisconsin Court of Appeals did not unreasonably apply *Strickland* when it decided that Mr. Shallcross likely would not have been successful even if he filed a motion to suppress the blood draw. And, in any event, there is no way to say that the Wisconsin Court of Appeals' application of *Strickland* "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 526 U.S. at 103. For all of these reasons, the Court is obliged to reject Mr. Shallcross's first ineffective assistance of counsel claim.

### 4.1.2    Motion to Suppress Inculpatory Statements

Next, in claims two, three, and four, Mr. Shallcross argues that his trial counsel was ineffective for failing to pursue various motions to suppress his confession. (Docket #1 at 8-11). In support of these claims, Mr. Shallcross argues that three constitutional bases provided grounds for suppression: (1) a Fourth Amendment violation for arresting Mr. Shallcross without probable cause; (2) a Fifth Amendment *Miranda* violation for continuing to question Mr. Shallcross after he invoked his right to counsel; and (3) a Fourth Amendment violation for failing to comply with *Riverside*'s time-sensitive probable cause determination requirements. (Docket #1 at 8-11). Though Mr. Shallcross presented only his *Miranda* theory during the course of *Shallcross*

*I*, he presented all three theories to the Wisconsin state courts in *Shallcross II*.[5] (Docket #12, Ex. 2 ¶ 27; Docket #12, Ex. 6).

When addressing Mr. Shallcross's claim in *Shallcross I*, the appellate court ruled that counsel's performance was not deficient under *Strickland* because the record demonstrated that Mr. Shallcross "did not want to contest the charges." (Docket #12, Ex. 4 ¶¶ 16-18). In addition, the court concluded that Mr. Shallcross suffered no prejudice from counsel's failure to pursue a motion to suppress on the grounds of a *Miranda* violation. (Docket #12, Ex. 4 ¶¶ 24-28). The court based this determination on the statements that Mr. Shallcross made during the interview in question, which revealed that Mr. Shallcross had merely made an "ambiguous" request about the mechanics of getting a lawyer. (Docket #12, Ex. 4 ¶ 25) (citing to the audio recording of the interrogation). In the court of appeals' view, because any motion to suppress Mr. Shallcross's confession based on *Miranda* would have been fruitless, trial

---

[5]The government argues that grounds two, three, and four are procedurally defaulted because Mr. Shallcross failed to file for a timely review of the Wisconsin Court of Appeals' decision in *Shallcross I*. (Docket #25 at 11-19). However, the government fails to acknowledge that Mr. Shallcross *only* argued the *Miranda* theory in *Shallcross I*. (Docket #12, Ex. 4). Later, Mr. Shallcross pursued all three of his theories in support of the motion to suppress during the course of *Shallcross II*. (Docket #12, Ex. 2). While the court of appeals' acknowledged that Mr. Shallcross raised "new theories" in *Shallcross II* (Docket #12, Ex. 2 ¶ 27), neither the trial court nor the appellate court in *Shallcross II* imposed any procedural bars with respect to Mr. Shallcross's claims. (*See* Docket #12, Exs. 2, 4); *see also U.S. ex rel. Bell v. Pierson*, 267 F.3d 544, 556 (7th Cir. 2001) (noting that where "the court did not explicitly apply [a state] procedural bar to the facts…[and] proceeded to discuss" the merits of a state post-conviction motion, the claim was not procedurally defaulted). Thus, the Court will analyze the merits of Mr. Shallcross's claims, noting that the Court's ultimate conclusion, in any case, is that Mr. Shallcross is not entitled to relief on his claims—whether it be owing to procedural default or lack of merit.

counsel did not prejudice Mr. Shallcross by foregoing such a motion. (Docket #12, Ex. 4 ¶ 28).

In *Shallcross II*, Mr. Shallcross asked the Wisconsin state courts to readdress the issue of his trial counsel's failure to pursue motions to suppress his confession. (Docket #12, Ex. 2 ¶ 27). However, despite Mr. Shallcross's presentation "new legal theories"—namely, those which arose under the Fourth Amendment, outlined above—the Wisconsin appellate court ruled that those claims were "unavailable" to Mr. Shallcross under the law of the case doctrine. (Docket #12, Ex. 2 ¶¶ 27-28) ("In *Shallcross I*, we rejected his claim that trial counsel was ineffective…because…trial counsel explained [that] Shallcross chose to accept responsibility rather than file a suppression motion.…[T]he decision to forego a suppression motion rested with Shallcross, and his lawyer did not act deficiently by complying.…The rule is well-settled…that a lawyer's rational strategic decision will not support a claim of ineffective assistance….").

Thereafter, the court of appeals went on to address the merits of the alleged *Riverside* violation. (Docket #12, Ex. 2 ¶¶ 29-31). With respect to that argument, the appellate court concluded that Mr. Shallcross suffered no prejudice from any purported violation because "there is no settled law on the remedy for non-compliance with" the *Riverside* rule. (Docket #12, Ex. 2 ¶¶ 29-31). Thus, because Mr. Shallcross could not demonstrate that there was a reasonable probability that the outcome of the proceeding would have changed had trial counsel presented a *Riverside* argument, the court held that trial counsel was not ineffective. (Docket #12, Ex. 2 ¶¶ 30-31) ("Ineffective assistance of counsel claims are limited to circumstances where the law is clear.") (internal citations omitted).

As demonstrated by the foregoing, the Wisconsin Court of Appeals in *Shallcross II* viewed all of the theories of relief upon which Mr. Shallcross based his ineffective assistance claim as meritless. This is because in *Shallcross I*, and again in *Shallcross II*, the court reiterated that trial counsel's performance—particularly with respect to the pursuit of motions to suppress Mr. Shallcross's inculpatory statements—was not deficient. This decision was not contrary to, or an unreasonable application of, federal law; nor did it rest on an unreasonable determination of the facts.

Here, the court of appeals did not unreasonably apply, or make a decision contrary to, *Strickland* when it concluded that trial counsel was not ineffective. Both at the plea stage and sentencing stage, Mr. Shallcross expressly remarked that he did not seek to pursue motions because he "wanted to accept responsibility" for his actions. (Docket #12, Ex. 4 ¶¶ 16-17; Docket #12, Ex. 2 ¶¶ 27-28); *see also Adams v. Bertrand*, 453 F.3d 428, 434–35 (7th Cir. 2006) ("[W]e presume that counsel's actions fall within the wide range of reasonable professional assistance, and defer to strategic decision-making by a trial attorney."); *Brown v. Sternes*, 304 F.3d 677, 691 (7th Cir. 2002) ("'Review of the first prong [of the *Strickland* test] contemplates deference to *strategic decision making*'….it is not the role of a reviewing court to engage in a post hoc rationalization for an attorney's actions by 'construct[ing] strategic defenses that counsel does not offer' or engage in Monday morning quarterbacking. ") (internal citations omitted) (emphasis in original). Nor did the state court commit any unreasonable determination of the facts. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions."). Indeed, Mr. Shallcross does not dispute that he

stated, during the course of the underlying criminal prosecution, that he did not want to pursue pretrial motions. (Docket #21 at 17-23). Thus, given Mr. Shallcross's express acknowledgment that he was giving up the opportunity to pursue pretrial motions in order to plead guilty (Docket #12, Ex. 4 ¶ 17), the Wisconsin Court of Appeals' conclusion that trial counsel's performance did not rise to the level of objective deficiency was not contrary to, or an unreasonable application of, *Strickland. See United States v. Wilks*, 46 F.3d 640, 644 (7th Cir. 1995) ("We have consistently held that a reasonable tactical move which the defendant himself has condoned cannot be the basis of a Sixth Amendment ineffective assistance claim.").

Though it is not necessary to this decision, *Atkins v. Zenk*, 667 F. 3d 939, 944 (7th Cir. 2012) ("To establish ineffective assistance of counsel, Atkins must meet *both* the deficient performance prong and the prejudice prong articulated in Strickland.…") (emphasis added), the Court also notes that Mr. Shallcross did not meet his burden to establish prejudice as a result of his trial counsel's actions. With respect to the alleged *Miranda* violation, the *Shallcross I* court reasonably based its conclusion that a motion to suppress would be fruitless on the audio tape of Mr. Shallcross's interrogation. (Docket #12, Ex. 4 ¶¶ 24-28). In light of that conversation, the Court had ample basis from which to conclude that Mr. Shallcross's question about *how* to get a lawyer did not constitute an "unequivocal" *invocation* of the right to counsel—an essential legal component of his claim. *See United States v. Wysinger*, 683 F.3d 784, 793 (7th Cir. 2012) ("If a suspect makes an equivocal or ambiguous reference to a lawyer, a reference that a reasonable officer would interpret as a statement that the suspect might be invoking the right to counsel, there is no requirement that questioning end.").

With respect to the *Riverside* argument—assuming that more than forty-eight (48) hours passed between Mr. Shallcross's arrest and the probable cause hearing[6]—because there was no "clearly established law" with respect to the remedy governing a *Riverside* violation, Mr. Shallcross's allegations of prejudice were not sufficient to establish a "reasonable probability that, but for counsel's errors, the petitioner would have gone to trial instead of pleading guilty." *Acevedo-Carmona*, 170 F. Supp.2d at 824. Indeed, "[w]hether a suppression remedy applies [to a *Riverside* violation] remains an unresolved question" of federal law. *Powell v. Nevada*, 511 U.S. 79, 85 (1994). Moreover, while in *Riverside* "the Court clarified that a determination of probable cause within forty-eight hours is presumptively reasonable…[i]n the case of detentions over forty-eight hours," the government may nonetheless act "reasonably" so long as it can prove that some "emergency or other extraordinary circumstance…justifie[d] the delay." *Chortek v. City of Milwaukee*, 356 F.3d 740, 746 (7th Cir. 2004) (internal citations omitted). In light of Mr. Shallcross's injuries and hospital stay prior to the probable cause hearing on December 9, 2009, it was also reasonable to conclude that the outcome of the proceeding would not have changed even had a *Riverside* violation been alleged. *Id.* at 746-48 ("The Supreme Court cautioned in…*Riverside* that, in evaluating the reasonableness of delay, 'courts must allow a substantial degree of flexibility.'") (quoting *Riverside*, 500 U.S. at 56).

---

[6]As the court of appeals in *Shallcross II* noted, the lower court had determined, based on police reports, that the police arrested Mr. Shallcross on November 28, 2009. (Docket #12, Ex. 2¶ 29 n.5). Because it was not necessary to their decision, however, the appellate court declined to the review the circuit court's finding. (Docket #12, Ex. 2¶ 29 n.5).

Finally, though neither the *Shallcross I* nor *Shallcross II* courts addressed the prejudice prong with respect to Mr. Shallcross's purportedly unlawful detention, the Court nonetheless finds that there existed ample probable cause to support Mr. Shallcross's arrest *See United States v. McCauley*, 659 F.3d 645, 649 (7th Cir. 2011) (noting that probable cause to arrest exists if the arresting officers possess "knowledge from reasonably trustworthy information that would lead a prudent person to believe that a suspect has committed a crime.") (internal quotations omitted). Based on the police reports, the trial court determined that the arrest of Mr. Shallcross occurred on November 28, 2009. (Docket #12, Ex. 6 at 17). This arrest, therefore, occurred *after* Mr. Gorectke informed the police that he remembered Mr. Shallcross: (1) driving the Civic the night of the accident; (2) crawling into the backseat after the crash; and (3) telling Mr. Gorectke to lie to the police about a third-party driver. (Docket #12, Ex. 6 at 22; Docket #12, Ex. 11 at 15). Thus, trial counsel's failure to pursue a motion to suppress on this ground did not cause Mr. Shallcross to suffer any prejudice as there can be no doubt that ample probable cause supported the arrest.

Accordingly, Mr. Shallcross's claims two, three, and four lack merit and will be dismissed.

### 4.3 Denial of Evidentiary Hearing

Finally, Mr. Shallcross argues that the circuit court in *Shallcross II* improperly denied him an evidentiary hearing. (Docket #1 at 12; #21 at 27; #30 at 9). The Wisconsin appellate court rejected Mr. Shallcross's claim that he was entitled to an evidentiary hearing on his state post-conviction motion because "the record conclusively show[ed] that [he] [wa]s not entitled to

relief." (Docket #12, Ex. 2 ¶ 32).[7] Mr. Shallcross's alleged entitlement to an evidentiary hearing, however, was the subject of state law. (Docket #12, Ex. 2 ¶ 32) (citing *State v. Balliette*, 2011 WI 79 ¶ 118, 336 Wis. 2d 358, 805 N.W.2d 334). Thus, because habeas relief "is unavailable to remedy errors of state law," this Court must deny Mr. Shallcross's sixth claim for relief. *See Perry*, 308 F.3d at 688.

5.    CONCLUSION

Because Mr. Shallcross has not established any basis for habeas relief, the Court is obliged to deny his petition for a writ of habeas corpus. Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Mr. Shallcross must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). While Rule 11(a) permits a district court to direct the parties to submit arguments on whether a certificate of appealability should be issued, additional arguments are not necessary here. As the Court discussed extensively above, reasonable jurists would not debate whether the petition should have been resolved in a different manner. Mr. Shallcross's claims are wholly without merit. No reasonable jurist would

---

[7]Mr. Shallcross had also argued, for the first time, that the circuit court who presided over his post-conviction motion was biased. (Docket #12, Ex. 2 ¶ 33). However, as he raised that issue for the first time on appeal, the court did not address it. (Docket #12, Ex. 2 ¶ 33).

find it debatable that Mr. Shallcross's petition fails to make any showing—let alone a substantial showing—of a violation of a constitutional right. As a consequence, the court must deny a certificate of appealability as to Mr. Shallcross's petition.

Accordingly,

IT IS ORDERED that Mr. Shallcross's petition for a writ of *habeas corpus* (Docket #1) be and the same is hereby DENIED;

IT IS FURTHER ORDERED that a certificate of appealability as to the Mr. Shallcross's petition be and the same is hereby DENIED; and

IT IS FURTHER ORDERED that this action be and the same is hereby DISMISSED with prejudice.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 17th day of October, 2016.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge